IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL P. C., | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| MARTIN O'MALLEY,[1] | : | |
| Commissioner of the | : | |
| Social Security Administration, | : | |
| Defendant | : | NO. 22-1406 |

**MEMORANDUM**

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE                                   August 30, 2024

Michael P.C. ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Social Security Administration Commissioner's ("the Commissioner") final decision, denying his claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Plaintiff filed a brief supporting his request for review, the Commissioner responded to it, and Plaintiff has filed a reply brief. For the reasons set forth below, Plaintiff's Request for Review will be denied, and Judgment will be entered in Defendant's favor and against Plaintiff.

**I.     PROCEDURAL HISTORY**[2]

On July 16, 2019, Plaintiff applied for DIB, alleging disability beginning March 6, 2019. R. at 12. The Social Security Administration ("SSA") initially denied Plaintiff's claim on January 31, 2020, and upon reconsideration on August 20, 2020, so Plaintiff requested a hearing. *Id.* at 12. On December 16, 2020, and January 13, 2021, Plaintiff appeared telephonically before

---

[1] Martin O'Malley became Commissioner of the Social Security Administration on December 20, 2023. Pursuant to Fed. R. Civ. P. 25(d), Mr. O'Malley is substituted as Defendant in this suit. Pursuant to the last sentence of 42 U.S.C. § 405(g), no further action needs to be taken to continue this suit.
[2] This court has reviewed and considered the following documents in analyzing this case: Plaintiff's Brief and Statement of Issues in Support of Request for Review ("Pl.'s Br."), Defendant's Response to Request for Review of Plaintiff ("Def.'s Resp."), Plaintiff's Reply Brief ("Pl.'s Reply"), and the administrative record ("R.").

Administrative Law Judge Jennifer Spector ("the ALJ") for those administrative hearings. *Id.* at 38, 60. Plaintiff, represented by an attorney, and vocational expert, Denise Cordes ("the VE"), testified at the hearings. *Id.* On February 11, 2021, the ALJ, using the sequential evaluation process ("SEP') for disability,[3] issued an unfavorable decision. *Id.* at 27. The Appeals Council denied Plaintiff's request for review, on February 15, 2022, making the ALJ's findings the Commissioner's final determination. *Id.* at 1. Plaintiff sought judicial review of that decision from this court on April 8, 2022. Both parties consented to the undersigned's jurisdiction pursuant to 28 U.S.C. § 636(c)(1).

## II.   FACTUAL BACKGROUND

A.   <u>Plaintiff's Personal History</u>

Plaintiff, born on February 5, 1955, R. at 65, was 66 years old when the ALJ rendered her decision. He resides with his wife and their pets. R. at 65. Plaintiff, a high school graduate, completed college coursework in the Air Force, but did not receive a college degree. *Id.* at 66-67.

---

[3] The Social Security Regulations provide the following five-step sequential evaluation for determining whether or not an adult claimant is disabled:

> 1. If the claimant is working, doing substantial gainful activity, a finding of not disabled is directed. Otherwise proceed to Step 2. *See* 20 C.F.R. § 404.1520(b).
>
> 2. If the claimant is found not to have a severe impairment which significantly limits his physical or mental ability to do basic work activity, a finding of not disabled is directed. Otherwise proceed to Step 3. *See* 20 C.F.R. § 404.1520(c).
>
> 3. If the claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed. Otherwise proceed to Step 4. *See* 20 C.F.R. § 404.1520(d).
>
> 4. If the claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed. Otherwise proceed to Step 5. *See* 20 C.F.R. § 404.1520(f).
>
> 5. The Commissioner will determine whether, given the claimant's residual functional capacity, age, education and past work experience in conjunction with criteria listed in Appendix 2, he is or is not disabled. *See* 20 C.F.R. § 404.1520(g).

B.      Plaintiff's Testimony

At the December 16, 2020 and January 13, 2021 hearings, Plaintiff testified regarding limitations because of pain in his back and both feet, carpal tunnel syndrome ("CTS"), irritable bowel syndrome ("IBS"), and heart issues. Plaintiff stated that he experiences pain in the lower third of his back; this pain also affects his legs. R. at 77. After he walks up a flight of stairs, he needs to sit down and experiences a level four pain. *Id.* If he stands for one to three minutes for any reason, the pain level rises to ten, and he must sit down. *Id.* Plaintiff testified that he is able to walk on an even, flat surface comfortably for approximately three to four minutes before he needs to stop. *Id.* He stated that he can sit in a chair for 15-20 minutes before he needs to "get up and move around." *Id.* at 78.

Plaintiff also described limitations with his feet. After right foot required hammer toe surgery, he developed Morton's neuroma. *Id.* at 81. A subsequent fall resulted in torn ligaments and exacerbated the pain in his right foot; he attends physical therapy twice a week. *Id.* Plaintiff stated that he has pain in his left foot caused by nerve damage from surgery. *Id.*

Plaintiff testified that he also suffers from CTS. *Id.* at 79. When he is not using his hands, he does not experience any pain. *Id.* However, his hands lock up and spasm for three to four minutes, if he tries to use a keyboard or write with a pen or pencil. *Id.* at 79-80. What used to take him thirty seconds to do in an email now takes him three to four minutes. *Id.* at 80. His ability to open a jar varies from day to day. *Id.* at 80-81.

Plaintiff detailed to the ALJ the impact of his IBS; a condition that requires him to use the restroom between four and fifteen times a day. *Id.* at 83. He estimated that two to three times a week, he experiences symptoms that require restroom use on the higher end of that range, and two days a week on the lower end. *Id.* at 84. He takes Lasix, as needed, to manage the symptoms. *Id.*

3

at 85.

Plaintiff has had two cardiac stents inserted and takes Xarelto, Sotalol, and Metoprolol for his heart condition. *Id.* at 86. He explained that he experiences nausea at times from all the medications he takes. *Id.* at 89.

Plaintiff testified that he is able to drive and kept his driver's license, although he could not sit for any extended period. *Id.* at 66. He does not require assistance with his personal grooming. *Id.* at 92.

C.      Vocational Expert's Testimony

At the January 13, 2021 administrative hearing, the VE testified. R. at 38. She characterized Plaintiff's past work as a management analyst and sales manager as skilled[4] and sedentary[5] positions, both performed at a medium[6] level of exertion, based on Plaintiff's file. *Id.* at 46-47. His position as a training representative was a skilled position, classified as light[7] work, but performed at a medium level of exertion. *Id.* at 47.

The ALJ's first hypothetical asked the VE to consider an individual of Plaintiff's age,

---

[4] "Skilled work requires qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced. Skilled work may require laying out work, estimating quality, determining the suitability and needed quantities of materials, making precise measurements, reading blueprints or other specifications, or making necessary computations or mechanical adjustments to control or regulate the work. Other skilled jobs may require dealing with people, facts, or figures or abstract ideas at a high level of complexity." 20 C.F.R. § 404.1568(c).

[5] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

[6] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

[7] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

education, and past work experience who could perform work at the sedentary exertional level. *Id.* This hypothetical individual can:

> occasionally push/pull with the bilateral upper extremities, but never with the bilateral lower extremities; can frequently reach, handle, and finger; cannot climb ladders, ropes, or scaffolds; cannot crawl; can occasionally engage in all other postural maneuvers; must avoid concentrated exposure to vibration, extreme temperatures, and have no exposure to hazards, such as unprotected heights or dangerous machinery. Can further have no travel for work which would result in not having ready access to a restroom.

*Id.* at 47-48. The VE replied that, given these restrictions, the past sales manager and training representative positions would be eliminated, however, such an individual could still perform the management analyst job. *Id.* at 48-49.

The ALJ next inquired whether an individual, under the previously stated restrictions, who also "could only sit, stand, or walk in any combination for four hours per day," would be precluded from work. *Id.* at 50. The VE answered that the additional limitation would be work preclusive. *Id.* An individual who "needed to shift positions from sitting to standing while performing [the] occupation [of] management analyst" could work. *Id.* The VE opined that shifting from sitting to standing every two hours would not be a problem. *Id.* at 51. However, needing to do so every 15 minutes would preclude work. *Id.*

### III. THE ALJ'S FINDINGS

In her decision, the ALJ issued the following findings:

1. [Plaintiff] meets the insured status requirements of the Social Security Act through March 31, 2021.

2. [Plaintiff] has not engaged in substantial gainful activity since March 6, 2019, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. [Plaintiff] has the following severe impairments: carpal

    tunnel syndrome s/p carpal tunnel release, CAD, congestive heart failure, paroxysmal atrial fibrillation, degenerative disc disease of the cervical and lumbar spine, obesity (20 CFR 404.1520(c)).

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except occasionally push and pull with the bilateral upper extremities, but never with the bilateral lower extremities, frequently reach, handle and finger, cannot climb ladders, ropes or scaffolds or crawl, occasionally engage in all other postural activities, must avoid concentrated exposure to vibration and extreme temperatures, and no exposure to hazards such as unprotected heights or dangerous machinery, and no travel for work which would result in not having ready access to a restroom.

6. [Plaintiff] is capable of performing past relevant work as a management analyst (DOT #161.167-010, SVP7, sedentary as defined medium as performed). This work does not require the performance of work-related activities precluded by [Plaintiff]'s residual functional capacity (20 CFR 404.1565).

7. [Plaintiff] has not been under a disability, as defined in the Social Security Act, from March 6, 2019, through the date of this decision (20 CFR 404.1520(f)).

## IV. DISCUSSION

A. <u>Standard of Review</u>

    Judicial review of the Commissioner's final decision is as follows. The Commissioner's findings of fact will not be disturbed if substantial evidence supports them. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). Substantial evidence is not "a large or considerable amount of evidence, but

rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  While it is more than a mere scintilla of evidence, *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), it may amount to less than an evidentiary preponderance. *Fargnoli v. Halter*, 247 F.3d 34, 38 (3d Cir. 2001); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).

Overall, this test is deferential to the ALJ.  *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987).  The court should affirm the ALJ's findings of fact that are supported by substantial evidence, even when the court, acting *de novo*, might have reached a different conclusion.  *Id.*  Indeed, the court may not undertake a *de novo* review of the Commissioner's decision by reweighing the record evidence itself.  *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *Monsour Med. Ctr.*, 806 F.2d at 1190-91.  Nor is the court permitted to "impose [its] own factual determinations."  *Chandler*, 667 F.3d at 359; *see Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002) ("We also have made clear that we are not permitted to weigh the evidence or substitute our own conclusions for that of the fact-finder.").  By contrast, the Commissioner's legal conclusions are subject to *de novo* review.  *Poulos*, 474 F.3d at 91; *Schaudeck*, 181 F.3d at 431.

B.   <u>Burden of Proof in Disability Proceedings</u>

To be found "disabled" under the Act, Plaintiff must carry the initial burden of demonstrating that she cannot engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R.

§ 404.1505(a). Plaintiff may establish a disability through: (1) medical evidence meeting one or more serious impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1; or (2) proof that the impairment is severe enough that Plaintiff cannot engage in any type of "substantial gainful work which exists in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)(2)(A).

Under the first method, Plaintiff is considered *per se* disabled by meeting one of the "listed" impairments. *Heckler*, 461 U.S. at 460. Under the second method, Plaintiff must initially demonstrate that a medically determinable impairment prevents a return to their past employment. *See Brown*, 845 F.2d at 1214. If Plaintiff proves that the impairment results in functional limitations to performing their past relevant work, then the burden of proof shifts to the Commissioner to prove that work exists in the national economy, which Plaintiff can perform given his age, education, work experience, and residual functional capacity. *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Poulos,* 474 F.3d at 92.

C.     Review of the Administrative Law Judge's Decision

Applying the sequential evaluation process, the ALJ concluded that Plaintiff could perform his past relevant work as a management analyst, sedentary as defined and medium as performed. R. at 27. At the administrative hearings, Plaintiff testified that the symptoms of his impairments preclude him from performing his prior work, or any other type of work. *Id.* at 38, 60.

Plaintiff presents two claims as a basis for remand. First, he argues that the ALJ committed reversible error by failing to account, at Step Four, for the impact of mild mental limitations on his ability to return to his prior relevant work. Pl.'s Br. at 3. Second, he challenges the authority of the ALJ and Appeals Council Judges. *Id.* at 11. He argues that since they were not properly appointed, they had no legal authority to adjudicate his claims. *Id.* This court finds that both of

Plaintiff's claims fail.

    1. <u>The ALJ Correctly Accounted for Plaintiff's Mild Mental Limitations and Properly Found Him Capable of Performing His Past Skilled Work</u>

Plaintiff states the ALJ did not account at Step Four for the impact of mild mental limitations on his ability to return to his prior skilled work. Pl.'s Br. at 3. Additionally, he appears to argue that the ALJ could not have found Plaintiff capable of skilled work in the RFC assessment because she also found Plaintiff had mild mental limitations earlier in the SEP. *Id.* at 4-6.

First, at all steps of the SEP, the ALJ followed the regulations and appropriately accounted for Plaintiff's mental limitations. When conducting Step Two of the SEP, the ALJ specifically considered Plaintiff's allegations of some difficulty with memory and concentration in his function report. R. at 17, 374. The ALJ found that Plaintiff had mild limitations in the following areas: (1) understanding, remembering, or applying information; and (2) concentrating, persisting, or maintaining pace. *Id.* at 17. She based her findings on the record and highlighted a lack of evidence indicating that these difficulties were particularly significant; this is because the record contained generally normal mental status examination findings. *Id.* The ALJ explained that the mild limitation findings were not included in the RFC assessment, which only "reflect[ed] the degree of limitation I have found." *Id.* at 18. When she then proceeded to make the RFC finding, she did not restrict the complexity of work Plaintiff could perform, thus, her subsequent finding at Step Four that Plaintiff could perform his past skilled work. *Id.* at 20, 24-26. In doing so, she cited relevant supporting evidence, including Plaintiff's mental health treatment records and expert psychologists' findings. *Id.* Notably, Plaintiff does not cite any evidence that the ALJ ignored or misrepresented, to support his contention that he lacked the mental functioning capacity to perform skilled work beginning on March 6, 2019.

9

Second, Plaintiff does not provide any authority for his argument that a finding of mild mental limitations precludes one's ability to perform prior skilled work. Contrariwise, courts in this Circuit have found that mild limitations in concentration, persistence, and pace did not preclude a claimant from returning to past relevant skilled work. *See Brumfield v. Saul*, No. 19-4555, 2020 U.S. Dist. LEXIS 152896, at *2-5 (E.D. Pa. Aug. 21, 2020); *Northrup v. Kijakazi*, No. 20-cv-00412, 2022 U.S. Dist. LEXIS 53577, at *10-14 (M.D. Pa. Mar. 23, 2022). This includes mild impairments caused by anxiety, as suffered by Plaintiff. *See O'Connor v. Comm'r of Soc. Sec*, 466 F. App'x 96, 101-03 (3d Cir. 2012) (non-precedential) (plaintiff could return to work as a public defender despite mild limitations in mental functioning due to anxiety).

This court finds that the ALJ properly treated Plaintiff's mental health impairments in finding him capable of performing his past skilled work. She adequately considered all the evidence of Plaintiff's mental health impairments and understood their impact before determining Plaintiff's RFC. Accordingly, the ALJ did not err by failing to explicitly include her mild SEP Step Two findings in Plaintiff's RFC. Since the ALJ's Step Four assessment was proper, remand on this basis is not warranted.

2. <u>Former Commissioner Berryhill Had Authority to Act When She Reappointed All ALJs and Appeals Council Judges on July 16, 2018</u>

Finally, Plaintiff argues that, by operation of statute, Berryhill's appointment as Acting Commissioner ("AC") expired on November 16, 2017, hence, she lacked authority to reappoint all ALJs and Appeal Council Judges, on July 16, 2018. Before that date, on April 17, 2018, President Trump had nominated Andrew Saul to be the Commissioner. Saul was not confirmed and sworn into office, until June 17, 2019. Reappointment of ALJs and Appeals Council Judges by an AC (or Commissioner) was needed because, prior to AC Berryhill's action, none of the Social Security Administration's ALJs or Appeals Council Judges had been validly appointed. As explained

10

below, Plaintiff's challenge to AC Berryhill's authority on July 16, 2018, lacks merit.

The Commissioner cites an abundance of cases, which hold that Berryhill acted properly on July 16, 2018, because, once Saul was nominated by President Trump, on April 17, 2018, Berryhill could exercise the powers of an AC, pursuant to 5 U.S.C. § 3346(a)(2). *See* Def.'s Resp. at 12 & n.6. Against this weight of persuasive authority, Plaintiff relies upon *Brian T.D. v. Kijakazi*, 580 F. Supp. 3d 615 (D. Minn. 2022), and *Richard J.M. v. Kijakazi*, No. 19-CV-00827, 2022 U.S. Dist. LEXIS 58606 (D. Minn. Mar. 30, 2022). *See* Pl.'s Br. at 12 (stating that "Plaintiff offers the exact same arguments here as the claimant in those cases"). These two decisions have been reversed and vacated, respectively. *See Dahle v. Kijakazi*, 62 F.4th 424, 429-30 (8th Cir. 2023) (reversing grant of summary judgment in *Brian T.D.* and noting that "Berryhill was properly serving as Acting Commissioner when she ratified the appointment of the SSA ALJs"), *cert. denied*, 144 S. Ct. 549 (2024); *Messer v. O'Malley*, No. 22-2127, 2024 U.S. App. LEXIS 4620, at *1 (8th Cir. Feb. 21, 2024) (granting consent motion to vacate district court's judgment in *Richard J.M.* and remanding case for further proceedings in light of *Dahle*). This court concurs with the weight of authority and concludes that, once President Trump nominated Saul to be the next Commissioner, Berryhill could exercise the authority of an AC, pursuant to § 3346(a)(2), and validly reappointed all ALJs and Appeals Council Judges, on July 16, 2018. Hence, Plaintiff's argument to the contrary fails.

### V. CONCLUSION

A thorough review of the relevant law and the record indicates that the ALJ did not commit reversible legal errors and that substantial evidence supports the ALJ's decision. Accordingly, Plaintiff's Request for Review is denied. An implementing Order and Order of Judgment follow.

11